## Commonwealth v. Carter

*George Anthou,* for Commonwealth.

*Harold V. Fergus, Jr.,* for State Bureau of Mines.

*Samuel L. Rodgers* and *Anthony Polito,* for defendants.

DiSALLE, J., November 17, 1971.—The six defendants have been charged with violations of the Pennsylvania Bituminous Coal Mine Act of July 17, 1961, P. L. 659, 52 PS §701-101, et seq., in connection with an accident which occurred at the Montour No. 4 Mine of the Pittsburgh Coal Company.

Although the accident resulted in the death of a miner, it is not charged that the acts of defendants which constituted the alleged violations were the cause of the death. Three of the defendants were working with decedent when the fall which caused his death occurred.

Defendants Pedeski, Jobkar and Piechnick were charged with violating section 252 of the Pennsylvania Bituminous Coal Mine Act, the relevant portion of which is as follows:

"Face workers and other employes whose work exposes them to hazards or falls of roof and coal shall thoroughly test the roof, face and ribs, before starting to work or before starting a machine, and frequently thereafter": 52 PS §701-252.

It is apparently conceded that these three defendants *visually* examined the roof, the violation being that their manner of testing did not conform to accepted practices.

Defendants Vrana and Carter, who are Mine Examiners, were charged with violating section 228(a) of the act in failing to get sufficiently close to the roof to test for gas and/or dangerous conditions.

The gist of the complaint against Mr. Chopp, the mine foreman, is that he violated section 222 of the act by failing to have the roof of the area in question bolted or provide cribbing which extended to the roof.

Defendants claim that the complaints fail to charge a violation of the Bituminous Coal Mine Act, and that, in any event, the statute is so vague in failing to set forth standards upon which a jury could make a finding of guilt, that the indictments should be dismissed. In view of our disposition of the cases, we need not reach these issues.

The bases of these prosecutions are the statements taken from defendants by the State Mine Inspector, Joseph Reggianni. He arrived at the mine at 3:30 p.m., about one hour after the accident. He then went into the mine and, once inside, proceeded to question defendants regarding the accident. He did this without first giving the Miranda warnings. He later took defendants into an office outside the mine, gave them the Miranda warnings, and proceeded to question them again. This is the way it happened according to the mine inspector in response to questions by the court:

"Q. Did you interrogate each one of the defendants inside the mine, while you were at the fall?

"A. I asked them questions as to what took place.

"Q. Did you ask them substantially the same kind of questions you asked them after they got the Miranda warning?

"A. About the same.

"Q. And were their answers substantially the same?

"A. The same. About the same."

Defendants have filed motions to suppress the statements given to the inspector. It is clear from the Bituminous Coal Mine Act that the State Mine Inspector in the Commonwealth of Pennsylvania is the chief law enforcement officer in the enforcement of the Bituminous Coal Mine Act.

By section 121 of the act, 52 PS §701-121:

". . . upon the discovery of any violation of this act, or upon being informed of any violation of the act, he shall institute proceedings against the person or persons at fault, under the provisions of this act."

He has the right under the same section to require the withdrawal of all persons from dangerous places in the mine. He has extensive duties in connection with the certification and decertification of mine officials and miners. He is required to devote the whole of his time to his office and to examine every gassy mine at least once every three months and nongassy mines once every four months. He makes detailed reports as to the extent to which the law is obeyed and the progress made in the improvement of mines: Section 117 of the Bituminous Coal Mine Act, 52 PS §701-117.

Section 401 of the act, 52 PS §701-401a, requires him to investigate every fatal accident, said investigation including the power to compel the attendance of

persons and to administer oaths. The section further provides:

"If it is found, upon investigation, that the accident is due to the violation of any of the provisions of this act by any person other than those who may be deceased, the Mine Inspector in the district shall institute appropriate proceedings against such person or persons."

There is no doubt that, in the instant case, the inspector was engaging in an investigation when he entered the mine to investigate the fatal accident.

At oral argument, the Commonwealth conceded that a State Mine Inspector is in the same position as a police officer vis-a-vis Miranda. However, it argues that in this situation the miners are not entitled to Miranda protection. Under our laws, persons who are charged with murder, rape, robbery, burglary and the many other serious crimes that are perpetrated upon our citizenry each day, are entitled to every constitutional safeguard that our legal system has been able to devise. To hold that men who daily risk their lives in the bowels of the earth in back-breaking labor, all the while exposed to the dangers of explosions, roof falls and black lung, are not entitled to the same constitutional protections as thieves, murderers, and drug peddlers, would be a travesty of justice. At best, the crimes with which these defendants are charged are highly technical violations of the bituminous mining laws. We hold that, when the charges are based upon activities allegedly occurring during the course and scope of their employment and directly connected therewith, Miranda applies. Nor can we see how the Commonwealth can quarrel with this position, since obviously the State Mine Inspector considered the warnings necessary, otherwise he would not have given them, as he eventually did.

Since the incriminating statements were elicited before the proper warnings were given, it is clear that they, as well as those given after the warning, must be suppressed. And since, without those statements, the prosecution cannot go forward, defendants should be discharged.

## ORDER

And now, this November 17, 1971, the evidence is suppressed, the indictments dismissed and defendants discharged.